# NO. 12-14-00189-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRACY RAY HASS,*<br>*APPELLANT* | § | *APPEAL FROM THE 59TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *GRAYSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*[1]

Tracy Hass appeals his convictions for theft and burglary of a building. He raises two issues on appeal. We affirm.

## BACKGROUND

A Grayson County grand jury returned a two count indictment against Appellant that alleged he committed the offenses of theft and burglary of a building. Appellant pleaded "not guilty" to both counts and a jury trial was held. The jury found Appellant "guilty" of both offenses, but did not assess punishment. During the punishment phase of trial, Appellant pleaded "true" to the State's allegations in its notice of enhancement. The trial court found the allegations "true" and assessed punishment at ten years of imprisonment. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred by not suppressing evidence that was seized as a result of an illegal arrest. Appellant's argument centers only on his arrest; he does not challenge the propriety of the arresting officer's initial encounter or his warrantless

---

[1] Pursuant to a docket equalization order issued by the Supreme Court of Texas on June 23, 2014, this appeal has been transferred to this Court from the Fifth Court of Appeals in Dallas, Texas.

search of the vehicle. Accordingly, we limit our discussion to the trial court's ruling only as it pertains to Appellant's arrest.

**Standard of Review**

We review a trial court's ruling on a motion to suppress for an abuse of discretion, which involves a bifurcated analysis. *See Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). We give almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Delafuente*, 414 S.W.3d at 177.

When the trial court does not make explicit findings of fact, we view the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *State v. Baker*, No. 12-12-00092-CR, 2013 WL 5657649, at *2 (Tex. App.—Tyler 2013, pet. dism'd) (mem. op., not designated for publication). Thus, we will uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Elizondo v. State*, 382 S.W.3d 389, 393–94 (Tex. Crim. App. 2012).

**Applicable Law**

A warrantless arrest is unreasonable per se unless it fits into one of the "few specifically established and well delineated exceptions" under the Fourth Amendment. *See Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993). One such exception is when an officer has probable cause to believe that an offense was committed in his presence. *See Amador*, 275 S.W.3d at 878; *see also* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005) (officer may conduct warrantless arrest when offense committed within presence or view).

The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires consideration of the totality of the circumstances facing the arresting officer. *Amador*, 275 S.W.3d at 878. A determination of probable cause "requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*,

214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949)). An offense is deemed to have occurred within an officer's presence or view when any of the officer's senses afford him an awareness of its occurrence. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

Thus, the ultimate question is whether, at the moment of the arrest, facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). And while the arresting officer's subjective intent or motivations are not taken into account, the officer's training, knowledge, and experience may be considered in determining whether the totality of the circumstances shows probable cause to arrest. *See Wiede*, 214 S.W.3d at 25.

**Officer Testimony**

The State called Sergeant Donald Bowling from the Grayson County Sheriff's Office to testify during the hearing on Appellant's motion to suppress. The record shows that Sergeant Bowling has been a certified peace officer in the State of Texas for over thirteen years. At the time of the hearing, Sergeant Bowling had been working for the sheriff's office for ten years. During this time, Sergeant Bowling investigated approximately fifty thefts. Based on his experience, he testified that most Grayson County thefts occur during the nighttime hours on unoccupied property, and automobile parts are commonly stolen.[2]

Sergeant Bowling testified that on January 16, 2012, he was dispatched to a location in Grayson County at 2:13 a.m. regarding suspicious vehicles on "abandoned" property. Bowling explained that the complaint was made by a neighbor who informed him that the vehicles consisted of a passenger car and a pickup truck hauling a trailer.

When Sergeant Bowling arrived at the location, the "abandoned" property was unoccupied, and at least thirty inoperable vehicles were on the land. The gate to the property was damaged and appeared to have been forcibly opened. However, Sergeant Bowling testified he did not see the passenger car or truck and trailer that had been reported. As a result, he left the location.

---

[2] The events in this case occurred during the early morning hours, but the parties and witnesses consistently referred to all events as occurring at "night."

At 5:40 a.m., Sergeant Bowling returned to the location and saw a passenger car high-centered on the edge of the roadway. The vehicle was approximately fifteen yards from the unoccupied property with the damaged gate. Sergeant Bowling testified that the trunk lid of the vehicle was open, but as he approached, Appellant walked around the vehicle and closed it. Sergeant Bowling explained that he believed Appellant's conduct was an effort to conceal what was inside the trunk of the vehicle. He further testified that Appellant seemed "very nervous," was unable to stand in one place, and was sweating profusely, despite the cool weather.

When Sergeant Bowling asked Appellant where he was coming from, Appellant told him that he was coming from his friend's house, but he did not know his friend's last name. Sergeant Bowling further testified that Appellant's explanation of where he was coming from and where he was going did not make sense because the vehicle was pointed eastward and the location where Appellant purportedly came from was east of the vehicle's location.

As he was standing next to the vehicle, Sergeant Bowling saw something heavy in the back seat that was covered by a white sheet or shower curtain. When he asked Appellant what was underneath the sheet, Appellant told Sergeant Bowling that it was automobile parts.[3] Sergeant Bowling testified that as he questioned Appellant, he became increasingly agitated and gave vague answers, stating that the automobile parts were purchased from a "friend." Believing that Appellant was in possession of stolen property, Sergeant Bowling arrested Appellant.

On cross examination, Sergeant Bowling testified that when he first arrived at the abandoned property, he had no "confirmation" that a theft had occurred. He also testified that he did not receive any additional information prior to seeing Appellant when he returned to the location later that morning.

**Discussion**

Appellant contends that his arrest was unauthorized because the aforementioned facts are as consistent with innocent activity as they are with criminal activity. To support this contention, he cites **Amores v. State**, 816 S.W.2d 407 (Tex. Crim. App. 1991). But **Amores** is inapplicable because it did not involve an offense that was committed within the arresting officer's presence. *See Amores v. State*, 816 S.W.2d 407, 414 (Tex. Crim. App. 1991) ("Thus, article 14.01, which

---

[3] At trial, the victim testified that some of the automobile parts found inside Appellant's vehicle came from a storage building on the unoccupied property.

4

authorizes a warrantless arrest for an offense committed in the officer's presence, is inapplicable.").

Here, the record showed that Appellant was found in close proximity to unoccupied property with a vehicle that had automobile parts in its back seat. The record also showed that when Sergeant Bowling approached Appellant, he closed the trunk lid of his vehicle, and was nervous, vague, and agitated upon answering Sergeant Bowling's questions. These circumstances, when viewed in light of Sergeant Bowling's knowledge and experience that (1) most Grayson County thefts occur at night on unoccupied property, (2) automobile parts are commonly stolen, and (3) several inoperable vehicles and a damaged access gate were located on the property where these suspicious vehicles were seen, are sufficient to warrant a prudent person in believing that Appellant had committed or was committing an offense, namely theft. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b); *Woodard*, 341 S.W.3d at 412. Because the record supports a finding of probable cause, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to suppress. *See Elizondo*, 382 S.W.3d at 393–94; *Amador*, 275 S.W.3d at 878. Accordingly, we overrule Appellant's first issue.

**ADMISSION OF EVIDENCE**

In his second issue, Appellant contends that the trial court erred by admitting character evidence to rebut defense witness testimony that he lacked knowledge of the offense.

**Standard of Review**

A trial court's ruling on the admissibility of extraneous offense evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Id.* at 343–44; *Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003). If the trial court's ruling is correct on any theory of law applicable to its ruling, it will not be disturbed on appeal. *De La Paz*, 279 S.W.3d at 344.

**Applicable Law**

Generally, evidence of an extraneous offense is not admissible during the guilt-innocence phase of trial. *See generally* TEX. R. EVID. 403, 404; *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). However, such evidence may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

TEX. R. EVID. 404(b)(2). This list is illustrative and not exhaustive, because extraneous offense evidence may be admissible to rebut an affirmative defense or a defensive issue that negates an element of the charged crime. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

For extraneous offense evidence to be admissible under Rule 404, the evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *See id.* at 220; *see also Santellan v. State*, 939 S.W.2d 155, 167 (Tex. Crim. App. 1997) (holding that Rule 404(b) objection entails a relevancy analysis even when not clearly articulated). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. TEX. R. EVID. 401.

In determining whether evidence is relevant, it is important that courts examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). There must be a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id.* If the extraneous offense evidence is not relevant apart from supporting an inference of character conformity, it is absolutely inadmissible under Rule 404(b). *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).

**The Defensive Theory**

During his case-in-chief, Appellant called Coleen Williams, his former girlfriend, to testify. The record shows that Williams testified during the grand jury proceedings that led to Appellant's indictment, and she pleaded guilty to committing the same theft for which Appellant was also charged. Williams explained that the reason she testified before the grand jury and the reason she was testifying at trial was because Appellant was "not involved and had no knowledge" of the offense.

Williams testified that the night before Appellant's arrest, she attended a party where she met a man named "Billy." The man told her that he owned property that had "some stuff [on it that] he was going to junk." Williams explained that at the time, she did not have regular employment and was "scrapping" and doing "odd-and-end jobs" to earn money. As a result, she purchased parts from Billy because she thought she could make money selling them.

Williams testified that when she made the purchase, the parts were already on a trailer attached to Billy's truck. While at the party, Williams loaded "her" vehicle with parts that were

6

in the trailer.[4] Williams testified that after she loaded the vehicle, she and Billy drove to property he purported to own. Williams drove her vehicle inside the property, and as she was driving out, made a turn that was too wide and "stuck" the vehicle on the side of the road.

Williams testified that Billy drove off, and she walked to the house where the party had taken place. Williams knew Appellant also had been at the party and sought his help to remove the vehicle from the ditch. She testified that she and Appellant walked to the vehicle's location, and Appellant told her he needed more help to move the vehicle. Upon hearing this, Williams walked to Appellant's mother's house to get help, and Appellant was arrested.[5]

On cross examination, the State sought to admit evidence of Appellant's prior convictions of theft and burglary. To support its contention that the evidence was admissible, the State argued that "he has done prior acts such as these and gone to prison for acts such as these." Thus, the State's argument continued, this evidence was necessary to rebut Appellant's defense of lack of intent and knowledge. Over defense counsel's objection, the trial court permitted cross examination regarding Appellant's prior convictions.

During cross examination, Williams confirmed that her testimony was meant to show that Appellant had no knowledge of what had occurred at the burglarized property, and that he had no intention of stealing anything. Thereafter, Williams confirmed she was not aware that Appellant was convicted of the offense of theft on May 18, 1984, and August 13, 2008, and the offense of burglary of a building on September 17, 1984, June 5, 1985, April 6, 1987, October 14, 1991, and June 13, 1996.

**Discussion**

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if it is without the owner's effective consent, or the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(1)–(2).

A person commits the offense of burglary if, without the effective consent of the owner, he enters a building (or any portion of the building) not then open to the public, with intent to

---

[4] Williams testified that she was in the process of purchasing the vehicle from Appellant, but he had not yet transferred the title.

[5] The record indicates that Appellant's mother lived several miles from the location where the vehicle was found.

7

commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). An individual may be guilty of burglary, even if he does not enter the premises, if he is acting with another in the commission of the offense. *See* ***Powell v. State***, 194 S.W.3d 503, 506–07 (Tex. Crim. App. 2006).

Intent and knowledge are essential elements of theft and burglary. *See* TEX. PENAL CODE §§ 30.02, 31.03; *see also* ***Walker v. State***, 539 S.W.2d 894, 896 (Tex. Crim. App. 1976) (essential element of theft is knowledge); ***Worthington v. State***, 469 S.W.2d 182, 183 (Tex. Crim. App. 1971) (intent is essential element of theft); ***Coleman v. State***, 832 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (essential element of burglary is intent).

Appellant contends that because the prior convictions are so remote in time, they served only as inadmissible character evidence, and failed to refute his lack of intent or knowledge. The relevancy of an extraneous offense for proof of intent is based on

> the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all.
>
> . . . .
>
> *It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand.*
>
> Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. . . . In short, there must be a similarity in the various instances in order to give them probative value[.]

***Plante v. State***, 692 S.W.2d 487, 491–93 (Tex. Crim. App. 1985) (citations omitted).

By eliciting Williams's testimony, Appellant raised the issue of whether he had the requisite *mens rea* to commit the charged crimes. Under the doctrine of chances, Appellant's prior convictions suggest it was more probable that Appellant knew the automobile parts in the vehicle were stolen than that he had innocent control over a vehicle containing automobile parts near a salvage yard during the early morning hours. *See* ***Plante***, 692 S.W.2d at 491–43. Stated another way, the prior convictions suggest that Appellant's defense of having no knowledge that

the items in the vehicle were stolen was unlikely. As such, Appellant's prior convictions are logically connected to the State's purpose for introducing them—to rebut Appellant's assertion that he lacked any knowledge of or intent to commit theft or burglary. *See Layton*, 280 S.W.3d at 240.

We agree with Appellant's contention that his prior convictions are remote in time to the charged offense. However, remoteness does not affect the prior convictions' relevancy; it affects only their weight. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987); *Linder v. State*, 828 S.W.2d 290, 296–97 (Tex. App.—Houston [1st Dist.] 1992, pet. denied) ("[R]emoteness does not *per se* render an extraneous offense irrelevant."). A trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. But when no objection is made under Rule 403 in a context such as this, our review encompasses only relevancy. *See Johnston*, 145 S.W.3d at 220 (holding that if only Rule 404 is invoked, the only determination is whether evidence is relevant apart from proving character conformity).

After viewing the evidence and the purpose for which it was used, we conclude that Appellant's prior convictions are relevant to rebut his defensive theory. *See Casey*, 215 S.W.3d at 879. Moreover, Appellant's counsel did not make a Rule 403 objection. Therefore, the trial court did not abuse its discretion by permitting the admission of Appellant's prior convictions. *See De La Paz*, 279 S.W.3d at 343. Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered May 29, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 29, 2015**

**NO. 12-14-00189-CR**

**TRACY RAY HASS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 59th District Court

of Grayson County, Texas (Tr.Ct.No. 061728)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*