

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0066-13

**JOSEPH DELAFUENTE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### WALLER COUNTY

**JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, KEASLER, HERVEY, and COCHRAN, JJ., joined. ALCALÁ, J., filed a dissenting opinion. WOMACK, J., concurred.**

## O P I N I O N

Appellant was convicted of Class B misdemeanor possession of marijuana and sentenced to three days' confinement and a fine.[1] On appeal, he challenged the trial court's denial of his motion to suppress, arguing that the arresting officer lacked reasonable suspicion to stop the vehicle in which he was traveling. The court of appeals reversed, ruling that there were no specific, articulable facts in the record to support reasonable suspicion for the stop. We granted the state's petition for

---

[1] *See* TEX. HEALTH & SAFETY CODE § 481.121.

discretionary review, vacated the court of appeals's judgment, and remanded so that court could determine the effect, if any, of our then-recent decision in *State v. Mendoza*.[2] The appellate court again reversed, and we granted the state review on two grounds. We now reverse the court of appeals's judgment and reinstate the trial court's denial of the motion to suppress.

## I. Facts and Procedural History

On June 24, 2009, a police officer patrolling Interstate 10 initiated a traffic stop based on his observation of traffic congestion in the inside lane. At the hearing on defendant's motion to suppress, neither the state nor appellant offered live testimony, and the state stipulated that appellant's arrest was warrantless. The only evidence before the trial court was the officer's offense report.

> On 06/24/09, at approximately 9:12 AM, I was on patrol on Interstate 10 in Waller County, Texas. I observed a traffic congestion in the inside westbound lane near the Igloo Road Overpass. Traffic volume was moderate. I inspected further and observed a grey Chevrolet 4-door sedan . . . traveling below the prima facie limit of 65 miles per hour and Impeding Traffic. I paced the vehicle, which was traveling at approximately 52 miles per hour, the initial speed utilizing the certified speed odometer on my marked patrol unit and confirmed with the in-car Doppler radar unit. I initiated a traffic stop of the vehicle.
>  . . .
> Initiation of the traffic stop required utilizing the rear emergency lights on the patrol vehicle to allow a safe lane change of my patrol vehicle, from the center to the inside lane. The driver of the Chevrolet sedan immediately yielded to the inside shoulder. I approached the driver's window, identified myself, stated the reason for the traffic stop and requested a driver's license from the driver and the front passenger. I immediately noticed a strong and distinct odor of both fresh and burnt marijuana.
> . . .

The driver, Melissa Agueros, said that she did not have a driver's license but produced a valid Texas identification card. The passenger, appellant, produced a valid Texas driver's license.

---

[2] 365 S.W.3d 666 (Tex. Crim. App. 2012).

The officer told Agueros that he was going to cite her for operating a motor vehicle without a license and appellant for permitting an unlicensed person to operate a motor vehicle. A check through the Waller County Sheriff's Department revealed that neither had a criminal history. Two small children in the back seat were properly secured in child-safety seats. Both adults seemed nervous.

The officer told both adults that he smelled marijuana in the vehicle. The driver began to cry, and appellant stiffened. The officer asked appellant to get out of the car when it was safe to do so and join the officer on the non-traffic side of the car. "I asked Mr. Delafuente, 'Where is it' and received a response of 'it's in the trunk.'" Appellant claimed sole responsibility for the marijuana and exculpated Agueros. With Agueros's assistance, the officer searched the interior of the car. He recovered a cloth bag that contained marijuana, paraphernalia, and a partially smoked roach from the passenger-side cup holder and two small pipes from the passenger floorboard. The trunk yielded a tube that was stained with smoke residue. The officer released Agueros and arrested appellant.

With no evidence to contradict the offense report, the trial court accepted the officer's statement that the vehicle in which appellant was a passenger was impeding traffic as credible and entered findings of fact and conclusions of law that "Defendant's[3] vehicle was impeding traffic" and that "[t]he officer had probable cause for the stop because the defendant[sic][4] was driving slow[ly] and impeding traffic."

The court of appeals reversed, ruling that the trial court found no specific, articulable facts to support reasonable suspicion. *Delafuente v. State*, 367 S.W.3d 731, 734-35 (Tex. App.—Houston [14th Dist.] 2012) ("There was no evidence that the normal and reasonable movement of traffic was

---

[3] The offense report does not indicate who owned the car.

[4] The officer's report made it clear that Agueros, not appellant, was driving.

impeded by appellant's driving."), *pet. granted*, 369 S.W.3d 224 (Tex. Crim. App. 2012). The state prosecuting attorney filed a petition for discretionary review in this Court, which we granted. We vacated the court of appeals's judgment and remanded the cause to it so that it could determine the effect, if any, of our then-recent ruling in *State v. Mendoza*[5] on its decision. *Delafuente v. State*, 369 S.W.3d 224 (Tex. Crim. App. 2012). On remand from this Court, the court of appeals found that *Mendoza* did not affect its holding and again reversed the denial of appellant's suppression motion. *Delafuente*, 389 S.W.3d 616, 622-23 (Tex. App.—Houston [14th Dist.] 2012).

## II. Analysis

We granted the state's petition on two grounds for review: (1) "Did the Court of Appeals' determination that the traffic stop was illegal ignore relevant facts and rational inferences, require the state to rebut innocent explanations, and misconstrue *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005)?"; and (2) "Did the Court of Appeals err by refusing to remand to the trial court for additional findings of fact and conclusions of law?" We hold that the court of appeals did not commit error on the second issue, but it did err on the first by ignoring relevant facts and failing to make reasonable inferences.

### A. The Fourth Amendment

In a hearing on a motion to suppress for violation of Fourth Amendment rights, a defendant must offer evidence that rebuts the presumption of proper police conduct, such as by alleging that the search or seizure was executed without a warrant. Once the defendant has made this threshold

---

[5] 365 S.W.3d 666 (Tex. Crim. App. 2012) ("[B]ecause the written findings in this case are ambiguous and there is no credibility determination," the case is remanded for supplemental findings. *Id*. at 667.).

showing, the burden shifts to the state to prove either the existence of a warrant or that the search or seizure was reasonable. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)). In this case, it is undisputed that the officer did not have a warrant to stop the vehicle, so the state was required to show that the stop was reasonable.

A police officer lawfully conducts a temporary detention when he has reasonable suspicion that an individual is involved in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity. *Ford*, 158 S.W.3d at 492 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). The reasonable-suspicion determination is an objective one made by considering the totality of the circumstances. *Id.* at 492-93.

### B. On Appeal

Appellate review of a ruling on a motion to suppress is a bifurcated analysis. Appellate courts must give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law *de novo*. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) (reviewing courts defer to trial-court findings of fact unless clearly erroneous); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) ("especially when the trial court's fact findings are based on an evaluation of credibility and demeanor"). In this case, the trial court issued explicit findings of fact declaring credible the officer's statement that the vehicle was "impeding traffic."

*C. Application*

We do not find any evidence supporting the appellate court's ruling that the trial court abused its discretion in crediting the offense report. Nothing indicates that the officer was untrustworthy or that his report was somehow created outside the bounds of standard procedure. In fact, during its analysis, the appellate court's opinion relied on facts stated in the report. *Delafuente*, 389 S.W.3d at 622. Disagreeing with the trial court's application of law to fact does not mean that, in finding those facts, the lower court committed an error so egregious that the credibility determination does not survive our "almost total deference." *Guzman*, 955 S.W.2d at 89. The trial court did not abuse its discretion in crediting the offense report, the only evidence before it.

That said, the officer's bare "finding" that the vehicle was impeding traffic is a legal conclusion, not a factual finding, because it asserts a violation of Section 545.363(a) of the Texas Transportation Code. In all likelihood, the officer meant simply to say that he saw a line of vehicles stacked up behind one slowly moving car, but the phrase "impeding traffic" is legally meaningful when used in conjunction with Section 545.363(a), so we cannot take this impediment at face value. We do not, however, need to remand to the trial court for additional findings under *Ford* or *Mendoza* because the trial court unambiguously found the offense report credible.

The facts in *Ford* did not support reasonable suspicion because, in that case, the state offered only the officer's bare conclusory statement in support of its reasonable-suspicion claim. *Ford, supra* at 493. The trial court in *Ford* was presented with only a conclusory statement that Ford was violating a traffic law.[6] In this case, the court of appeals analogizes to *Ford* by pointing out that the

---

[6] "The court of appeals stated that 'Trooper Peavy testified that he saw [Ford] following another car at a distance that Peavy believed was insufficient and, thus, in violation of the statute.'. . . The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which Peavy could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity. Instead, the trial court was

officer provided his conclusory opinion that the vehicle in question was "impeding traffic." *Delafuente*, 389 S.W.3d at 623. It is true that, in this case, the officer used a legally meaningful phrase to describe what he saw, but unlike *Ford*, he did more than provide an unsubstantiated subjective assertion—he provided other facts to support that statement. The language in the trial court's findings specifically referred only to the report's conclusion that the vehicle was impeding traffic, but that conclusion was necessarily based on the officer's other observations of "traffic congestion" with "moderate" traffic volume, presumably caused by the "the gray Chevrolet 4-door sedan . . . traveling below the prima facie limit of 65 miles per hour" at an actual speed of 52 miles per hour. The trial court could not have credited the report's conclusion without crediting the rest of its factual contents.

The *Mendoza* trial court did make findings, but they were ambiguous and did not address a crucial credibility determination. *Mendoza*, *supra* at 672-73. We reiterated that trial courts, as "Johnny[s]-on-the-Spot," are much better situated than appellate courts to make determinations of credibility and historical facts, and we therefore remanded to the trial court so it could clarify as to which part of the officer's testimony it credited and what facts it found. *Id.* at 669, 673. The instant case is also distinguishable from *Mendoza* because there was no evidence to contradict the offense report, which the trial court explicitly found credible. Because we must therefore use the facts contained in the offense report, we overrule the state's second ground for review.

*D. Reasonable Suspicion Determination*

The court of appeals's ruling was correct to the extent that remand to the trial court for additional fact-finding is unnecessary in this case. The reasonable suspicion test calls for

---

presented only with a conclusory statement that Ford was violating a traffic law." *Ford*, 158 S.W.3d at 493.

consideration of specific, articulable facts *and reasonable inferences therefrom*—a totality of the circumstances,[7] not the limited reading the court of appeals performed. The facts stated in the officer's report are sufficient to support a ruling of reasonable suspicion.

The report indicates that there was "*a* congestion" in the inside lane. The use of the article "a" allows at least an inference of one particular backlog of vehicles, as opposed to general "congestion." *See* WEBSTER'S II NEW COLLEGE DICTIONARY 1 (Margery S. Berube et al. eds., Houghton Mifflin 1999) (defining the indefinite article "a" as "used before nouns and noun phrases that denote a single, but unspecified, person or thing"). The statement in the offense report that the congestion was in a single lane, not spread over the freeway as a whole, also supports this inference; if the congestion was a result of heavy traffic,[8] it would not have been limited to a single lane.

The report also asserts that the vehicle was moving slowly. Driving at a speed that is less than the posted limit is not, by itself, sufficient for reasonable suspicion; a violation occurs only when the normal and reasonable movement of traffic is impeded. *Texas Dept. Pub. Safety v. Gonzales*, 276 S.W.3d 88, 93 (Tex. App.—San Antonio 2008) (citing cases from multiple intermediate appellate courts for the same proposition). However, the report asserts that the vehicle was moving thirteen miles per hour under the speed limit in the "inside lane," as verified by pacing and radar. It is common knowledge that the inside lane on a freeway is the passing, or "fast," lane. *See* TEX. TRANSP. CODE § 545.051(b) ("An operator of a vehicle on a roadway moving more slowly than the normal speed of other vehicles . . . shall drive in the right-hand lane available for vehicles, or as close as practicable to the right-hand curb or edge of the roadway, unless . . . ."). Additionally,

---

[7] *Ford*, *supra* at 492-93.

[8] The offense report indicates that traffic volume was moderate.

the facts indicate that the officer had to move from the center lane to the inside lane to signal the vehicle to pull over, and it promptly moved to the inside shoulder. There would be no reason for the vehicle to pull onto the left shoulder unless it was already in the inside lane. Driving slowly in the inside lane is more likely to effect a traffic backup because the normal flow of traffic in that lane is usually moving more rapidly than in the lanes to its right.

Taken in isolation, each of these facts might not support reasonable suspicion, but, considered together, they support the reasonable inference that the vehicle's slow pace in the inside lane caused the traffic congestion that the officer observed. Taken together, these facts and inferences are sufficient to lead a reasonable officer to conclude that appellant was engaged in criminal activity, namely a violation of Section 545.363(a).

We therefore sustain the state's first ground for review. The court of appeals disregarded relevant facts and rational inferences when it ruled that the officer lacked reasonable suspicion to make the stop.

### III. Conclusion

The trial court's explicit language made it clear that the court found the officer's offense report credible. We therefore affirm the appellate court's ruling that remand to the trial court for additional fact-finding is unnecessary. However, the court of appeals read the report too narrowly and disregarded reasonable inferences from the included facts. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's denial of appellant's motion to suppress.

Delivered: November 27, 2013
Publish