

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00218-CR
_____

CHRISTOPHER BRANTLEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2013-437,916; Honorable Jim Bob Darnell, Presiding

February 23, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Christopher Brantley, was convicted by a jury of possession with intent to deliver a controlled substance, to-wit: cocaine, in an amount of four grams or more but less than 200 grams.[1] At the conclusion of the punishment phase of trial, the jury assessed his punishment at confinement for life. By

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). An offense under this section is a first degree felony. *Id.* at (d). As such, it was punishable by confinement for life or for any term of not more than ninety-nine years or less than five years and by a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2011).

two issues, Appellant contends (1) he was not advised of his *Miranda*[2] rights prior to a custodial interrogation and (2) he was illegally detained and searched in violation of his Fourth Amendment rights. We affirm.

BACKGROUND

During the evening hours of November 29, 2011, two officers of the Anti-Gang Unit of the Lubbock Police Department observed a vehicle leaving a motel in a high crime area. When the vehicle failed to stop at a posted sign, the officers began following it. Due to safety concerns arising from the fact they were dressed in plain clothes and driving an unmarked vehicle, the officers did not stop the vehicle for several miles. Once the vehicle pulled into a contained area—a residential parking lot—the officers initiated a traffic stop. At that time, one of the officers approached the driver's side of the vehicle while his partner approached the passenger's side. When the driver rolled down his window, he was asked to exit the vehicle so he could be identified. The officer on the driver's side then smelled a strong odor of marihuana and asked for consent to search the driver and his vehicle. The driver consented to the search.[3]

In response to the driver's consent, the passenger, Appellant, opened the vehicle door as if to exit but was directed by the second officer to remain in the vehicle. According to the officer who testified at the suppression hearing, his partner yelled at Appellant, "[n]o, no, no" and "[g]et back in there." That officer then "pushed [Appellant] and the door back shut containing the individual back in the vehicle." At that point, the officer accused

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] Although the driver gave consent to search the vehicle, the officer testified at trial that narcotics were found on Appellant before the search of the vehicle, therefore, the search of the vehicle was based on both consent and probable cause. No contraband or paraphernalia was found in the vehicle.

Appellant of attempting to evade by opening the vehicle door in an aggressive manner and a backup officer was called. The officer then observed Appellant making suspicious moves inside the vehicle. After a uniformed officer arrived in a patrol vehicle, Appellant was asked to exit the vehicle. As he exited, currency fell from his lap and out of his pockets. One of the plain-clothed officers asked for and received permission to search Appellant for drugs and weapons. He searched Appellant's clothing and noticed his shoes were untied. He asked Appellant to remove his shoes and when Appellant removed his right shoe, the officer observed a plastic baggie underneath Appellant's foot containing a white rock substance. A field test showed the substance to be crack cocaine.[4] A total of $3,447 in cash was also discovered. Appellant was handcuffed and questioned without being administered any *Miranda* warnings. He was then arrested and subsequently indicted for possession of a controlled substance with intent to deliver.

ISSUE ONE—MIRANDA VIOLATION

By his first issue, Appellant contends he was not advised of his *Miranda* rights prior to a custodial interrogation in violation of his rights under the Fifth and Fourteenth Amendments, Article I, Section 10 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure. The State maintains Appellant did not preserve his complaint for appellate review. For the following reasons, we agree with the State.

PRESERVATION OF ERROR

To preserve a complaint for appellate review, a party must present a timely request, objection or motion to the trial court stating specific grounds for the desired ruling

---

[4] Lab tests later showed the substance to be 6.07 grams of a substance containing cocaine.

unless the specific grounds are apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1)(A). *See also* TEX. R. EVID. 103(a)(1). The purpose of requiring specificity is twofold: (1) to inform the trial court of the basis of the objection and give the court an opportunity to rule on it and (2) to give the opposing party the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Additionally, the complaint being raised on direct appeal must not vary from the complaint asserted at trial. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Knox v. State,* 934 S.W.2d 678, 687 (Tex. Crim. App. 1996) (finding nothing preserved for review if objection at trial does not comport with issue on appeal). Preservation of error requirements apply equally to alleged *Miranda* violations. *Allridge v. State*, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988).

ANALYSIS

By his written motion to suppress, Appellant asserted he was unlawfully detained and searched during a traffic stop. He referenced the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Texas Constitution, and articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. Other than global assertions and citations to constitutional and statutory provisions, no arguments were presented in the written motion regarding a violation of his *Miranda* rights or the involuntariness of any statements he may have made.

At the hearing on his motion to suppress, Appellant's focus was on whether the officers had reasonable suspicion to conduct a traffic stop and search his person, not

4

whether his *Miranda* rights were violated.[5]  Furthermore, during trial, Appellant did not object to the testimony of the officers, thereby alerting the trial court to any complaint concerning a *Miranda* violation or the involuntariness of his statements.

Because no objection was made, neither the trial court nor opposing counsel had an opportunity to respond to any complaints concerning *Miranda* violations or the voluntariness of Appellant's statements.  When a party effectively fails to communicate his complaint, error, if any, is forfeited on appeal.  *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (noting that a reviewing court should not hesitate to hold that appellate complaints are lost when a party does not effectively communicate his desire. Otherwise, a reviewing court should reach the merits of a complaint.).  Appellant's failure to communicate his complaints in his written motion to suppress and his failure to complain during trial about the issues upon which he now seeks relief operates as a forfeiture of those complaints and preserves nothing for review.  *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).  Issue one is overruled.

ISSUE TWO—UNLAWFUL DETENTION

By his second issue, Appellant contends he was illegally detained and searched in violation of his rights under the Fourth and Fourteenth Amendments, Article I, Section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure. We disagree.

---

[5] A passenger in a vehicle he does not own does have standing to challenge the validity of a traffic stop because his personal liberty and freedom are intruded on by that action.  *See Brendlin v. California*, 551 U.S. 249, 251, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007); *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984).

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures by government officials. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Article 38.23 of the Code of Criminal Procedure, an exclusionary rule, guards against the admission of evidence obtained in violation of the constitutions or Texas law. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). A defendant must establish three foundation requirements to trigger a jury instruction on whether evidence was obtained illegally. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). Those requirements are: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary. *Id.*

To stop and temporarily detain a person for investigatory purposes, an officer must have specific, articulable facts that, when combined with rational inferences therefrom, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Terry*, 392 U.S. at 21; *Johnson v. State,* 414 S.W.3d, 184, 191-92 (Tex. Crim. App. 2013). For purposes of constitutional analysis, both investigative detentions and arrests are seizures of a citizen by law enforcement officers and implicate Fourth Amendment protections. *Johnson*, 414 S.W.3d at 191; *Martinez v. State*, 304 S.W.3d 642, 651-52 (Tex. App.—Amarillo 2010, pet. ref'd). The differences between the two are the degrees of intrusion involved and the different legal justifications required of each. *Martinez*, 304 S.W.3d at 652.

A police officer lawfully conducts a temporary investigatory detention when he has reasonable suspicion that an individual is involved in criminal activity. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude the person detained is, has been, or soon will be engaging in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* at 492. A reasonable suspicion determination is an objective one made by considering the totality of the circumstances. *Id.* at 492-93.

As applicable to the facts of this case, an officer may lawfully stop and thereby temporarily detain the occupants of a vehicle for a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). Failure to stop at a stop sign is a traffic violation. TEX. TRANSP. CODE ANN. § 545.151(a)(1)(A) (West 2011). The only witness at the motion to suppress hearing was the officer who conducted the traffic stop. He testified that he observed the vehicle in which Appellant was a passenger fail to stop at a posted sign. As such, even though the initial detention was lawful, Appellant contends his subsequent custodial detention was not because the officer did not have probable cause to believe an offense had been committed.

ANALYSIS

After stopping a vehicle for a traffic violation, one of the investigating officers smelled a strong odor of marihuana. After smelling the marihuana, the officer asked the driver for consent to search his vehicle. Immediately after the driver of the vehicle gave

7

consent to search his vehicle, Appellant opened the passenger door and began to exit. The other officer standing on the passenger's side of the vehicle testified that Appellant opened the passenger door aggressively leading him to believe he was attempting to evade or escape. He ordered Appellant back in the vehicle and pushed the door shut. The testimony at trial was that Appellant was nervous and making furtive movements inside the vehicle. At that point, the officer suspected possible criminal conduct and he asked Appellant to exit the vehicle. Because the officers had smelled marihuana, observed Appellant's suspicious behavior and reasonably believed Appellant was attempting to flee, the testimony established sufficient reasonable suspicion to continue their investigatory detention.

Appellant disputes that he was attempting to evade and argues his arrest was unlawful. The standard for a continued detention is not whether he was actually evading arrest or whether the particular conduct was, in fact, innocent or criminal. Instead, the relevant inquiry is whether reasonable inferences arising from particular non-criminal acts reach the level of reasonable suspicion that an individual is involved in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. 2011). "[V]iewed through the prism of the detaining officer's particular level of knowledge and experience," we find the officer was justified in his reasonable suspicion that Appellant was engaged in criminal activity. *Id.* at 915. We conclude, based on the totality of the circumstances viewed through an objective lens, the detaining officer had reasonable suspicion to justify Appellant's continued detention while an investigation was being conducted as to a potential possession of marihuana offense. During that lawful detention, Appellant voluntarily consented to the search of his person which led to the discovery of the crack cocaine, giving rise to probable cause for his arrest. Accordingly, Appellant's investigatory

8

detention and subsequent arrest for possession of a controlled substance was lawful. *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014).  Issue two is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.