

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00232-CR

_____

CHRISTI BETH PERRIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4
Collin County, Texas
Trial Court No. 004-82924-2014

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

It was shortly past midnight as Officer Antony Brown of the Allen[1] Police Department patrolled through an otherwise quiet residential neighborhood of the city and noticed a legally parked Volkswagen Jetta with its driver-side door open, its interior dome light on, and no visible person in or near it. Because an open door on an apparently unattended vehicle was "not a normal thing," Brown turned his patrol car around to investigate the situation, reasoning that "[w]ith something like that, you don't know if a car is broken into or, you know, or just what." As he turned around and parked his patrol car in front of the Jetta, he saw a woman, later found to be Christi Beth Perrin, walking along that "same side of the road." He ran the Jetta's license plate and determined that the car was registered in another city. Brown saw Perrin get into the Jetta and begin to pull the car away from the parking space, when he turned on his overhead lights and stopped her car "to find out why she left her car sitting there with the door open and was walking . . . along the other vehicles on the roadway."

When Brown spoke to Perrin, he noticed that her polo shirt was on backwards and that her eyes were abnormally dilated.

Perrin was charged with driving while intoxicated (DWI), a Class B misdemeanor offense. At trial, Perrin moved to suppress the evidence obtained following the traffic stop that eventually led to her arrest on the ground that the officer lacked reasonable suspicion to initiate the traffic

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, Perrin's case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Dallas Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

stop. The trial court denied her motion. In a jury trial, she was convicted and sentenced to six days in jail.

On appeal, Perrin contends that the trial court erred in denying her motion to suppress[2] because the officer lacked reasonable suspicion to stop her vehicle.

We affirm the trial court's judgment.

A routine traffic stop—a seizure—implicates both the United States and Texas Constitutions and, under both, must be reasonable. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. It is undisputed that the officer here did not have a warrant to stop Perrin. Thus, the State was required to prove that the seizure was reasonable. *See Delafuente v. State*, 414 S.W.3d 173, 176 (Tex. Crim. App. 2013). Denying Perrin's motion to suppress, the trial court implicitly found that the State met its burden, prompting this point of error on appeal.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See*

---

[2]Perrin told Brown that she was trying to visit a friend in Colleyville, a city more than thirty-five miles away. Perrin denied consuming alcohol, but admitted to Brown that, earlier that day, she had taken four prescription drugs, Valium, Depakote, Adderall, and Trazadone. Adderall is a nervous system stimulant, while the other three drugs are nervous system depressants. After administering the field sobriety tests, Brown arrested Perrin for DWI. Officer Matthew Johnson performed a drug recognition exam on Perrin and concluded that she lacked the normal use of her mental and physical faculties due to ingestion of central nervous system stimulants and depressants. She submitted to having her blood drawn and tested. According to the blood test, her blood contained therapeutic levels of amphetamine (such as Adderall) and diazepam, the generic name for Valium, but that the level of nordiazepam, a diazepam metabolite, exceeded therapeutic levels. The test also revealed an unquantified level of valproic acid, the generic name for Depakote. Forensic scientist Eduardo Padilla of the Department of Public Safety Austin Crime Laboratory, testified that each of the depressants could have an impairing effect on its own, and a greater impairing effect is possible when they are taken in combination.

3

*Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial courts' rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are to conduct a de novo review of mixed questions of law and fact not falling within this category. *Id.* We must affirm the trial court's decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

Law enforcement officers may stop and briefly detain individuals suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To make an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b); *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). "This is an objective standard that disregards any subjective intent of the officer making the stop . . . ." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The facts used to support the investigative stop must support more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

Here, the specific facts show (a) an unusual activity, an open door of an unattended car at 12:30 a.m.; (b) evidence connecting Perrin to the unusual activity, her entry into the car and her act of starting to drive it away; and (c) an indication that the unusual activity is related to a crime, reasonable suspicion that burglary or another crime is, has, or will be committed when a car door is left open in an unattended car in the middle of the night.[3] *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Therefore, the record supports the trial court's ruling that Brown had reasonable suspicion to stop Perrin's car. Accordingly, we overrule this point of error and affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     June 24, 2015
Date Decided:      July 14, 2015

Do Not Publish

---

[3]While there are several innocent, yet reasonable explanations for why Perrin's car door was open, reasonable suspicion does not depend on the "most likely explanation" for a suspect's conduct, and reasonable suspicion may exist even if the circumstances standing alone may be just as consistent with innocent activity as with criminal activity. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011).