**Affirmed and Memorandum Opinion filed June 9, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00312-CR

_____

**JEREMY JAMALE MORRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Court Cause No. 14-20504**

## M E M O R A N D U M   O P I N I O N

Appellant was charged by indictment with state-jail-felony evading arrest or detention. *See* Tex. Penal Code Ann. § 38.04(a), (b)(1)(A). The jury found appellant guilty and the trial court assessed punishment at two years' confinement in the Texas Department of Criminal Justice.[1] In his sole issue on appeal, appellant

---

[1] This appeal was transferred to this court from the Ninth Court of Appeals. In cases transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

contends the evidence is insufficient to support his conviction. Specifically, he contends the evidence is insufficient to establish beyond a reasonable doubt that (1) officers had a legal basis to detain him and (2) he fled from police with knowledge that he was fleeing from a police officer. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2014, Officers Matthew Bean, Erik Kvarme, Jr., Chad Andreu, and Jason Schmoker of the Beaumont Police Department were patrolling the north end of Beaumont, Texas in a black unmarked Chevrolet Tahoe. Schmoker was driving. Bean, Andreu, and Schmoker were wearing Class A police officer uniforms and Kvarme was in a bicycle patrol uniform.[2]

As the officers approached the intersection of Center and Harrison, they observed appellant standing in the middle of the road at the driver's side window of a Chevrolet TrailBlazer. The officers suspected appellant was conducting a hand-to-hand narcotics transaction because the area was known to them as a location for narcotics sales. Bean testified that he has made numerous drug arrests in that area and, from his experience, appellant's activity of reaching into the driver's window of a car that was stopped in the middle of the road in that area was consistent with narcotics sales. Schmoker drove the Tahoe behind the TrailBlazer and attempted to make contact with appellant and the occupant of the TrailBlazer.

Appellant looked at the officers and, as they began to exit the vehicle, fled. The TrailBlazer drove off at a high rate of speed. Bean yelled, "Stop, Police," as he, Andreu, and Kvarme ran after appellant. Schmoker activated the Tahoe's emergency lights and siren. As appellant ran, he looked back at the officers on

---

[2] The Class A police officer uniforms include a visible badge and a bullet proof vest. The bicycle patrol uniform includes a shirt that says POLICE in large block bold letters on the back, a Beaumont Police patch on the side, and a badge on the front.

multiple occasions and discarded items from his pocket. After appellant ran approximately sixty yards, he stopped, turned around, and "said something along the lines of, 'who are y'all?'"[3]

Kvarme tackled appellant and ordered him to "put your hands behind your back." Appellant did not comply and Kvarme tried to place appellant in handcuffs. Andreu caught up to them and observed Kvarme on top of appellant, struggling to detain him. Appellant continued to resist the officers, despite verbal commands to stop, so Andreu punched appellant in the face. Appellant continued to scream and fight, so Andreu struck appellant again. Kvarme was then able to get appellant's hands behind his back and handcuff him.

Appellant testified that, when the Tahoe approached, he was giving gas money to the TrailBlazer driver, the mother of his children. He thought the Tahoe was trying to run over him. He could not see the occupants because of window tinting, but ran from them when they exited the vehicle. He ran until he lost his balance jumping a ditch, which is when he turned around and saw that his pursuers were police officers.

The officers retraced the path of appellant's flight. Schmoker picked up appellant's discarded shoes, money, and a clear plastic bag. Kvarme found pieces of crack cocaine on the ground. The cocaine was seized as evidence and Bean logged it into the property office. Appellant was transported first to a hospital, and then to the police department.

The jury found appellant guilty and the trial court sentenced him to a term of two years' confinement. Appellant timely appealed.

---

[3] Bean testified appellant ran about sixty yards or three quarters of a city block, and Kvarme testified appellant ran about two thirds of a city block.

3

## II.    DISCUSSION

Appellant challenges the sufficiency of the evidence to support his conviction of evading arrest or detention.  Having reviewed the record, we conclude the evidence is sufficient to support appellant's conviction and we affirm the judgment of the trial court.

## A. Standard of Review

When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt.  *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virgina*, 443 U.S. 307, 319–19, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)).  We do not sit as thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  Rather, we defer to the responsibility of the factfinder to fairly resolve conflicts in both circumstantial and direct evidence.  *Id.*  Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## B. Evidence of Lawful Detention

Appellant argues the evidence is insufficient to establish the lawfulness of the officers' attempt to arrest or detain him.  If there were not sufficient grounds for the temporary detention, the subsequent arrest would be tainted and therefore unlawful.  *Rodriguez v. State*, 578 S.W.2d 419, 420 (Tex. Crim. App. 1979).  "A police officer lawfully conducts a temporary detention when he has reasonable

4

suspicion that an individual is involved in criminal activity." *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). Reasonable suspicion "exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity." *Id.* (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Appellant argues that the officers detained him for impeding traffic but that, as a pedestrian, he could not have impeded traffic under the statute. *See* Tex. Transp. Code Ann. § 545.363 (2013). Assuming without deciding that appellant is correct, the officers also testified that they suspected appellant was, or soon would be, engaging in a narcotics sale.

The officers were in a well-known narcotics area where they had made multiple drug related arrests in the past. The officers had observed cars lined up along the street and, based on previous experience, suspected the cars were waiting to buy narcotics. After circling the block, the officers observed appellant and the TrailBlazer impeding traffic. Because they had reasonable suspicion that criminal activity was afoot, the officers were entitled to temporarily detain appellant and investigate. *See Delafuente*, 414 S.W.3d at 177; *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, we conclude the evidence was sufficient to show the officers had reasonable suspicion that appellant was involved in criminal activity.

## C. Evidence of Intentional Flight

Appellant also contends the evidence is insufficient to support his conviction for intentionally evading a peace officer. A person commits a state jail felony if "he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him" and the individual has been previously convicted

5

for the same crime. Tex. Penal Code Ann. § 38.04(a),(b)(1)(A).[4] A person commits a crime under Section 38.04 if he knows a police officer is attempting to arrest or detain him but nevertheless refuses to yield to a police show of authority. *State v. Atwood*, 16 S.W.3d 192, 194 (Tex. App.—Beaumont 2000, pet. ref'd); *see also Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "'[F]leeing' is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). Intent may be inferred from conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Here, appellant was standing at the driver's side of a blue TrailBlazer in the middle of the road when the police officers saw him. As the officers exited the Tahoe, appellant started running. Despite the officers yelling, "Stop, Police" and activating the Tahoe's siren and emergency lights, appellant continued to run approximately sixty yards.

Appellant argues that he did not intend to flee from police officers. Instead, appellant claimed that the tint on the Tahoe was too dark to see its occupants. Appellant testified that he was afraid the Tahoe would hit him so he "had to jump out the way because it was so close." Appellant argued he did not know police officers were present until he caught his balance after jumping over a ditch. He testified that he turned around and "the first thing I do, I throw my hands up; and when I throw my hands up, [Kvarme] tackled me." Appellant claimed he was then knocked unconscious.

Each officer testified during the guilt/innocence phase of trial. Bean and Kvarme testified appellant looked right at them before he began to flee. Bean, Kvarme, and Andreu each yelled "Stop, Police," as they ran after appellant.

---

[4] Appellant does not dispute having a previous conviction for an identical offense.

Throughout the chase, appellant looked back at the officers multiple times and "started throwing things out of his pockets." Once appellant ran approximately sixty yards, Kvarme was able to tackle him.

The jury, as the judge of credibility, was entitled to resolve any inconsistencies in the evidence. *See Isassi*, 330 S.W.3d at 638; *see also Trevino v. State*, 474 S.W.3d 737, 745 (Tex. App.—Beaumont 2014, pet. ref'd). Therefore, the jury was entitled to believe or disbelieve any part of appellant's testimony. On this record, a reasonable factfinder could have concluded appellant knew the men pursuing him were peace officers attempting to detain him and intended to flee.

### III. CONCLUSION

Viewing the evidence in the light most favorable to the verdict, we determine that a rational factfinder could have found all of the elements of the offense of evading arrest beyond a reasonable doubt. Accordingly, we overrule appellant's sole issue on appeal and affirm the judgment of the trial court.


/s/　　Martha Hill Jamison
　　　　Justice


Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

7