In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-24-00078-CR**

**JESSE AARON WILKERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the County Court at Law No. 4**
**Montgomery County, Texas**
**Trial Cause No. 22-365189**

_____

**MEMORANDUM OPINION**

Appellant Jesse Aaron Wilkerson ("Appellant" or "Wilkerson") was charged by information with the offense of driving while intoxicated with a blood or breath alcohol concentration level of .15 or more, a misdemeanor offense. *See* Tex. Penal Code Ann. § 49.04. Wilkerson pleaded guilty to the offense, and the trial court found him guilty and sentenced him to three days in Montgomery County jail with credit for time served and a fine of $1,000 and ordered that Wilkerson's driver's license be suspended for 90 days. In a single issue on appeal, Wilkerson argues that the trial

court abused its discretion by denying his motion to suppress. We affirm the judgment as reformed.

## Hearing on Motion to Suppress

Before trial, Wilkerson filed a Motion to Suppress[1] asking the trial court to suppress all evidence seized or obtained without a warrant because law enforcement lacked reasonable suspicion to believe that Wilkerson was engaged in criminal activity. After a jury was selected and sworn, the trial court conducted a hearing on the Motion to Suppress outside the presence of the jury.

The defense called Brit Lopez ("Lopez" or "the Trooper") to testify. Lopez testified that he works in criminal investigations with the Texas Department of Public Safety, and he was the arresting officer in this case. Lopez testified that the events that resulted in Wilkerson's arrest began when Lopez saw a car sitting in a dirt field shortly before midnight on March 22, 2022, and the car pulled out onto the road. Lopez recalled that Wilkerson moved into the right turn lane and then turned right onto another road. Lopez agreed that he saw Wilkerson's vehicle head towards the median, then hit the brake and "ma[k]e a maneuver to the right to avoid crashing into the median[.]" According to Lopez, at some point Wilkerson pulled into a parking lot, and Lopez turned on the lights of his patrol vehicle to make a traffic

---

[1] Wilkerson also filed a "Motion to Suppress Statements," which we do not discuss because it is not at issue in this appeal. *See* Tex. R. App. P. 47.1.

stop. Lopez agreed that Wilkerson had not committed a traffic violation, but Lopez stopped Wilkerson based on reasonable suspicion.

On cross-examination, Lopez testified that he was suspicious when he saw Wilkerson's vehicle parked in a dirt field where cars do not normally park:

> It was parked angled away from [the road] where I saw the taillights. The time of night, being 11:45 at night, and my knowledge of that - - it was parked next to storage units that I have knowledge [of] from my work in the Magnolia area of being broken into at nighttime.
> . . . .
> A lot of storage units in Montgomery County get broken into at nighttime, as well as that one. I've been there for a suspicious person call before where they observed people on cameras that they didn't appear to - - supposed to be there.
> . . . .
> I didn't know who was in the vehicle. I couldn't tell how many times it was occupied, if they were doing something illegal parked off in the dark off the main roadway. Just any criminal activity that could have been possible.

Lopez testified that he turned around to watch the vehicle and to see why it was parked in a dirt field with no lights on and no lights in the area because in five years of law enforcement, Lopez had not seen anyone park in the middle of that field. Lopez recalled that later, when he was following the car, he saw the car make "an erratic swerve away from [the] inner median and the[n] overcorrect[] and then swerve[] from going off the roadway." Lopez testified that he became suspicious because "that's not a normal driving behavior for a vehicle to make[,]" based on his knowledge that DWIs are more likely at night, and because the car turned into a mini strip center where the businesses were closed. Lopez stated, "it didn't make sense

3

why the vehicle would leave a dirt lot and then enter a business that also backs up to the [storage units] that[] [were] closed with no reason to be there." Lopez testified that he had reasonable suspicion that criminal activity was occurring or may have occurred.

On redirect examination by the defense, Lopez agreed that his offense report stated he had reasonable suspicion for the traffic stop, but that the report did not say "criminal activity," nor did it specify a traffic violation, and he testified that his reasonable suspicion was based on the totality of the circumstances including parking in a dirt field for an unknown reason and swerving while driving. Lopez testified about his offense report as follows:

> I start off with the report with a vehicle being parked out in a dirt lot that - - that's not normally traffic - - there's no - - no one goes out there, so that's why I turned around on the vehicle. So, it's stated right there. And then the swerving further. I didn't know if they were distracted, if they were trying to - - maybe they were out there smoking dope and they were trying to hide dope when I got behind them. I don't know. But the swerving just led on top of that for me to stop them.

Lopez agreed that Exhibit 2 is a fair and accurate representation of events on the night of Wilkerson's arrest, and the exhibit is titled "Dash Camera." The video exhibit was admitted during cross-examination of Lopez and played for the trial court. The video shows Wilkerson's car swerving in the road before turning into a parking lot and stopping next to a dentist's office, and Wilkerson is unsteady on his

4

feet when he gets out of his car. Wilkerson is also heard saying, "I shouldn't have been drinking and driving."

After Lopez testified and the State and defense presented arguments to the trial court, the trial court found that Trooper Lopez had identified specific articulable facts to support reasonable suspicion, and the trial court denied the motion to suppress.[2] Following the hearing on the motion to suppress, Wilkerson pleaded guilty and elected for the trial court to assess punishment. After a hearing on punishment, the trial court assessed punishment at 3 days-time served in jail and a fine of $1,000 and a 90-day suspension of his driver's license. Wilkerson timely appealed.

## Issue

In a single issue, Wilkerson argues that the trial court abused its discretion by denying his motion to suppress. Wilkerson argues that Trooper Lopez lacked reasonable suspicion to support the warrantless traffic stop. According to Wilkerson, Trooper Lopez's testimony that Wilkerson could have been driving while impaired or distracted or was possibly engaged in a break-in was "mere conjecture[]" and was not supported by specific and articulable facts demonstrating a reasonable suspicion that Wilkerson was engaging in criminal activity. Wilkerson argues that the

---

[2] After the trial court announced its ruling, the defense argued another motion to suppress based on an alleged failure to produce evidence that the trial court denied and which is not at issue in this appeal.

Trooper's testimony amounts to no more than an "inchoate and unparticularized suspicion or hunch[]" that does not meet the requirements for reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Wilkerson challenges three observations Lopez claimed supported his decision to make a traffic stop: (1) Wilkerson stopped briefly in a dirt lot next to a storage unit business; (2) Wilkerson swerved within a lane to avoid what Wilkerson describes as "a poorly marked median[;]" and (3) Wilkerson pulled into a strip center where no businesses were open. According to Wilkerson, none of these observations standing alone is evidence that rises to the level of reasonable suspicion that Wilkerson was engaged in criminal activity. Wilkerson also argues that, taken together and considering the totality of the circumstances, the cumulative force of these observations also does not amount to reasonable suspicion of criminal activity. Wilkerson further argues that Trooper Lopez gave conflicting testimony about whether a single evasive driving maneuver by Wilkerson suggested that Wilkerson might be impaired or distracted. According to Wilkerson, the trial court abused its discretion in granting the motion to suppress and reversal is required.

Standard of Review and Applicable Law

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Where, as here, a trial court does not make explicit findings, we review the

6

evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record that support its conclusion. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) (citing *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006)). In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the witnesses' credibility and weight to be afforded testimony. *See id.* Therefore, we defer almost totally to a trial court's determinations of historical fact, so long as such determinations are supported by the record, and we also defer to the trial court's rulings on mixed questions of law and fact that hinge on credibility and demeanor. *Martinez*, 570 S.W.3d at 281. We apply a de novo standard of review to the trial court's rulings on pure questions of law or mixed questions of law and fact that do not hinge on credibility or demeanor. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case." *Id.* (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)).

A warrantless traffic stop is analogous to a temporary detention, and it may be justified when the officer has "reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022) (citing *Derichsweiler v. State*, 348 S.W.3d 906,

914 (Tex. Crim. App. 2011)). "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004). Reasonable suspicion requires more than a hunch, and it exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity. *Hardin*, 664 S.W.3d at 872 (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)); *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011)).

When determining whether reasonable suspicion exists to support a warrantless detention, we consider the totality of the circumstances, and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity. *Hardin*, 664 S.W.3d at 872 (citing *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007)); *Kerwick*, 393 S.W.3d at 274 (citing *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). In formulating reasonable suspicion, a police officer can draw on his own

8

experience and specialized training. *Johnson v. State*, 622 S.W.3d 378, 385 (Tex. Crim. App. 2021) (citing *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017)). The officer making the traffic stop does not need to be able to identify a specific criminal infraction. *See id.* at 384 (citing *Derichsweiler*, 348 S.W.3d at 916); *see also McGrew v. State*, No. 09-16-00424-CR, 2017 Tex. App. LEXIS 9328, at *9 (Tex. App.—Beaumont Oct. 4, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Derichsweiler*, 348 S.W.3d at 916).

Whether the facts known to a police officer at the time of the stop amount to reasonable suspicion of criminal activity is a mixed question of law that we review under a de novo standard of review. *Kerwick*, 393 S.W.3d at 273. The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Id.* at 274 (citing *Terry*, 392 U.S. at 21-22; *York*, 342 S.W.3d at 536).

Analysis

In this case, Trooper Lopez testified that his decision to stop Wilkerson was based upon his observations and his training and experience, including his knowledge of the area where Wilkerson was located that night. Lopez testified that he first noticed Wilkerson's car at about midnight, parked in a dirt field near storage units where Lopez had never seen anyone park and where there were no lights. Lopez also testified that he knew those storage units had experienced break-ins at night.

9

Lopez testified that he then observed Wilkerson's car pull out onto the roadway and make an "erratic swerve" in traffic and then overcorrect. Exhibit 2, the dash camera video from Lopez's patrol vehicle, is consistent with Lopez's testimony. Lopez further testified that he then observed Wilkerson's vehicle pull into a retail parking lot next to a dentist's office where none of the businesses were open. Lopez testified that he was suspicious because Wilkerson's behavior was also consistent with a driver who may be intoxicated from drugs or alcohol. Lopez also explained he could not see who was inside the car, and he was aware of a history of nighttime break-ins at the storage units, and DWIs are more common at night.

Any alleged inconsistencies in Trooper Lopez's testimony were for the trial court to weigh in its role as factfinder. *See Valtierra*, 310 S.W.3d at 447. Based on the totality of the circumstances and viewing the evidence in a light most favorable to the trial court's ruling, we conclude that Trooper Lopez explained specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude Wilkerson had been or was or would soon be engaged in criminal activity and that Lopez had provided a reasonable suspicion sufficient to justify his initial stop and temporary detention of Wilkerson. *See, e.g.*, *Guerra v. State*, 432 S.W.3d 905, 912 (Tex. Crim. App. 2014) (concluding that facts known to the law enforcement officer provided reasonable suspicion sufficient to justify the initial stop and temporary detention of the defendant). Trooper Lopez

10

testified to specific articulable facts that, combined with rational inferences from those facts, would lead Lopez to reasonably conclude Wilkerson was, had been, or soon would be engaged in criminal activity. *See Espinosa*, 666 S.W.3d at 667; *Hardin*, 664 S.W.3d at 872. Lopez was not required to identify a specific criminal infraction or traffic violation to support reasonable suspicion to stop Wilkerson. *See Johnson*, 622 S.W.3d at 384; *Derichsweiler*, 348 S.W.3d at 916; *McGrew*, 2017 Tex. App. LEXIS 9328, at *9. Lopez's testimony reflects that he observed unusual activity by Wilkerson that gave some indication that the unusual activity was related to a crime. *See Kerwick*, 393 S.W.3d at 273. We conclude that the trial court did not err by denying Wilkerson's motion to suppress. *See Espinosa*, 666 S.W.3d at 667.

That said, we note that a section of the judgment includes "Plea to 1st Enhancement Paragraph: TRUE" and "Findings on 1st Enhancement Paragraph: TRUE[.]" The information under which Wilkerson was charged did not allege an enhancement, and the proceedings do not reflect that the State alleged an enhancement nor that the trial court made a finding of "true" to any prior convictions. This Court has the authority to reform the trial court's judgment to correct clerical errors. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We therefore reform the trial court's judgment to delete "TRUE" and substitute "N/A" to both the "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph."

11

Having overruled Appellant's sole appellate issue, we affirm the trial court's judgment as reformed.

AFFIRMED AS REFORMED.


LEANNE JOHNSON
Justice

Submitted on December 4, 2024
Opinion Delivered December 18, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.