

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00494-CV
_____

SALEM ABRAHAM, APELLANT

V.

DANIEL GREER AND FIX THE FACTS FOUNDATION
D/B/A AGENDAWISE, APPELLEES

On Appeal from the 31st District Court
Hemphill County, Texas
Trial Court No. 6931, Honorable Steven R. Emmert, Presiding

July 25, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Is a public official always a public official . . . that seems to be the underlying question in the appeal before us.

Salem Abraham appeals from an order dismissing his lawsuit for libel against Daniel Greer and Fix the Facts Foundation, d/b/a AgendaWise (collectively referred to as AgendaWise). The order of dismissal was entered pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. Abraham appealed, and we reverse the order.

*Background*

During the campaign for the 88th District State Representative, Abraham attended a campaign event held by Jim Landtroop in Levelland at the Honeycomb Pie Shop. Abraham, who was an elected board member of the Canadian Independent School District (CISD), was supporting another board member, Ken King, in that election. As the meeting was concluding, the moderator asked if there were questions. Abraham was recognized, and he stated he wanted to question Landtroop about purportedly false comments made with respect to the CISD tax rates. The moderator told Abraham that the questions should be saved for another day and adjourned the meeting. A political consultant for Landtroop then asked Abraham to leave the premises. Abraham complied.

AgendaWise published an Internet blog. One entry addressed Abraham's appearance at the Landtroop campaign event. In it, AgendaWise stated that Abraham "had to be forcefully removed from the Landtroop campaign event this week by Governor Perry's DPS detail." No mention of Abraham's status as a school board member was made in the article, however. Nor was mention made of his purpose for attending the event or interest in quizzing Landtroop. Other than the use of his name, he was simply described as a "[n]ewcomer political donor," a "campaign treasurer" for a candidate trying to "oust" Landtroop, and a person who "has loaned or given" a candidate in a House of Representative's race "$100,000."[1]

---

[1] That part of the article referring to Abraham stated:

Newcomer political donor Salem Abraham has also given to McKnight. Abraham is the campaign treasurer in the effort to oust stalwart conservative Representative Jim Landtroop. Salem has loaned or given Ken King over $100,000 to defeat Landtroop. Landtroop's challenge was orchestrated by Speaker Joe Straus, and included a radically redrawn district.

Abraham had to be forcefully removed from a Landtroop campaign event this week by Governor Perry's DPS detail.

Abraham notified AgendaWise that the comment about being "forefully removed" by the DPS (Department of Public Safety) was incorrect. That led to issuance of an amended article by AgendaWise via the Internet stating: "Abraham was asked to leave a Landtroop campaign event this week for heckling. Mr. Abraham cooperated." Being described as "heckling" also falsely characterized his actions, according to Abraham. And, upon reading the article, one again discovers that Abraham's status as a school board member of and relationship with CISD went unmentioned.

Thereafter, Abraham sued AgendaWise for libel. In response, AgendaWise moved to dismiss the proceeding under § 27.003 of the Civil Practice and Remedies Code. The trial court granted the motion, and in its order doing so, it found "that the statements . . . regarding Salem Abraham, of which Salem Abraham complains, were false, and without foundation." That finding was followed by the statement that "[n]evertheless, pursuant to §27.001, et seq. of the Tex. Civ. Prac. & Rem. Code, the Court finds it must dismiss the Plaintiff's claims herein."

*Argument*

Needless to say, Abraham appealed the trial court's decision. Though he presents a myriad of issues for consideration (one of which encompasses the constitutionality of § 27.001, *et. seq.*, of the Texas Civil Practice and Remedies Code), we need only address the first one proffered. It concerns whether the trial court erred in requiring him to prove whether AgendaWise acted with actual malice in uttering the false statements. We conclude that it did.

If a suit "is based on, relates to, or is in response to a party's exercise of the right of free speech . . . that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (West Supp. 2013). Dismissal must be denied, though, "if the party bringing the legal action establishes by clear and specific evidence

3

a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Here, no one disputes that the suit initiated against AgendaWise involved the latter's attempt to exercise a right of free speech. Furthermore, the trial court dismissed the proceeding because "Abraham ha[d] been unable to present proof of malice by Daniel Greer and AgendaWise by clear and specific evidence." Such proof was allegedly needed because Abraham was a public official due to his status as a trustee of the CISD.

Abraham sued AgendaWise for libel. The latter consists of "a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury." *Id.* § 73.001 (West 2011). When the person defamed is a public official, recovery is dependent upon proving that the falsehood was uttered with actual malice. *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2014) (stating that to recover for defamation, "a plaintiff must prove the media defendant: 1) published a statement; 2) that defamed the plaintiff; 3) while either acting with actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement").

Additionally, one acts with actual malice when the falsehood is uttered with actual knowledge of its falsity or with reckless disregard as to its truth or falsity. *Darby v. New York Times Co.*, No. 07-12-00193-CV, 2014 Tex. App. LEXIS 2197, at *17-18 (Tex. App.—Amarillo, February 26, 2014, pet. filed). To act recklessly, one must utter the statements while harboring a high degree of awareness of their probable falsity or while

entertaining serious doubts about their truthfulness. *Id.* Consequently, the focus lies upon what the writer knew or thought at the time the article was written or published. *Id.*

As one can infer from the description of actual malice, proving same can be a difficult task. Abraham sought to avoid it not necessarily by denying his status as a public official, though. Rather, he invoked the holding of the Texas Supreme Court opinion in *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex. 1976). The latter involved a plaintiff, Foster, who happened to be the county surveyor suing the local newspaper for defamation. In addition to being the county surveyor, he was also a civil engineer in private practice who periodically did consulting work for Webb County. The allegedly false statement concerned flooding in a Laredo neighborhood and indicated that Foster platted the area. Foster interpreted this as a falsehood insinuating that he was somehow responsible for the flood and sued. Eventually, the newspaper moved for summary judgment. Via that motion, it contended that "Foster is either a 'public official' or 'public figure' as defined by the Supreme Court of the United States in the line of decisions beginning with *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964), and consequently, there could be no liability without a showing of 'actual malice'" and "the undisputed evidence in the record negated a finding of 'actual malice.'" *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d at 811. The trial court agreed and granted the motion. The intermediate court of appeals affirmed. In accepting the cause for review, the Texas Supreme Court recognized that the "crucial question" involved, among other things, the accuracy of classifying Foster as a public official. *Id.*

Resolving the controversy began with the court analyzing the seminal case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 83 S.Ct. 710, 11 L.Ed.2d 686 (1964). It noted that in *New York Times Co.*:

5

> [T]he Supreme Court of the United States, for the first time, considered the extent to which the constitutional protections for speech and press limit recovery in a libel action brought by a public official against critics of his official conduct. The plaintiff, an elected city commissioner whose duties included supervision of the city's police department, brought suit in a state court alleging that he had been libeled by an advertisement printed in the New York Times newspaper. The advertisement included statements, some of which were false, about action by the city police directed against students who participated in a civil rights demonstration and against a leader of the civil rights movement. Following a jury verdict for the plaintiff and affirmance by the state supreme court, the case was reviewed by the Supreme Court of the United States which reversed and remanded holding that the constitutional guarantees of the First and Fourteenth Amendments require "*a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.*" [ ] [Emphasis added.] 376 U.S. 254 at 279-80. In so holding the Court recognized "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254 at 270. The Court further reasoned that "[a] rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount—leads to . . . 'self-censorship.'" 376 U.S. 254 at 279.

*Foster v. Laredo Newspapers. Inc.*, 541 S.W.2d at 811-12 (emphasis in original). The foregoing revealed that our Supreme Court viewed *Sullivan* as focusing on the need to enhance "uninhibited, robust" debate on public issues, such as official conduct undertaken by public officials. And, from that desire arose the requirement to impose upon public officials the obligation to prove malice when suing for defamation.

Thereafter, the *Foster* court discussed what constituted a public official and ultimately held that the term encompassed a county surveyor. *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d at 814. Yet, that did not result in its affirming the decisions of the two lower courts.

It appears that its focus returned to a particular passage in *Sullivan*. That is, upon concluding that Foster was a public official, the court turned to whether the article

6

related to his position as county surveyor. And "because the allegedly libelous statements in the newspaper article did not clearly relate to Foster's 'official conduct' as county surveyor," the court relieved him of the duty to prove the newspaper uttered the falsehood with actual malice. *Id.* at 815. "[I]f the article contained no reference, implied or otherwise, to Foster's position as county surveyor, it could not be said that the article related to his fitness for the office. If such is the instance, the allegedly libelous statements did not concern Foster's 'official conduct' and the *New York Times* rule would not be applicable," according to the court. *Id.*

So, in effect, *Foster* teaches us several things. The lesson applicable here is that it is not enough for a defamed individual to simply be a public official before the yoke of proving actual malice can be thrust upon him. The defamation must also "clearly relate" to the complainant's conduct as a public official or his fitness for office. *See Guinn v. Texas Newspapers, Inc.*, 738 S.W.2d 303, 305 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (refusing to require proof of malice because "the newspaper item did not refer to Guinn in his official capacity; it named him 'John B. Guinn' rather than 'Judge Guinn.' Furthermore, the content of the article did not expressly relate to Guinn's official conduct as a justice of the peace, nor was it concerned with Guinn's performance of his official duties . . . ."); *accord Nobles v. Eastland*, 678 S.W.2d 253, 255 (Tex. App.— Corpus Christi 1984, writ ref'd n.r.e) (stating that "[s]ince it is undisputed that appellant is a public official, appellant could not recover damages unless he proves that the defamatory falsehood *relating to his official conduct* was made with 'actual malice'") (emphasis added).

Like the newspaper article in *Foster,* AgendaWise's article here said nothing about the defamed individual's status as an elected or public official or his performance of any duty arising from such status. Nor did it describe the purpose of his appearance

at the "Landtroop campaign event." Instead, it alluded to his status as a financial contributor to various candidates and as a campaign treasurer for one attempting to "oust [a] stalwart conservative . . . ." From this, it cannot be said that the article "clearly relate[d]" to Abraham's elected office, performance of duties related to that office, or his fitness for that office.

As recognized in *Foster,* the "'public official' rule set forth in the *New York Times* case was not meant to protect reporting of matters that have at best a coincidental bearing on governmental affairs." *Foster v. Laredo Newspapers, Inc.* 541 S.W.2d at 815. The matters being reported at bar did not even have a coincidental bearing on governmental affairs related to Abraham's elected position.

We would be remiss in ignoring the passages in *Foster* stating that 1) "there may be instances where the absence of an express reference to an individual's official capacity is unimportant," 2) "[m]any public officials are so well-known in their communities that the general public automatically associates them with their official positions," and 3) "[in] such instances an express reference in a newspaper article to the individual's official capacity is unnecessary and the reference is implied." *Id.* at 815. Yet, they have no effect on our decision. AgendaWise published the article on the Internet. That the Internet is, quite frankly, an international forum cannot be denied. No evidence of record appears from which one can reasonably infer that Abraham is so well-known within that forum that "the general public automatically associates . . . [him] with . . . [his] official position." Just as many living in and around Laredo back in 1974 may have known Foster to be an elected official when he was purportedly defamed by the newspaper, there may be like numbers within Abraham's immediate community that know him to be a school trustee. Yet, that did not prevent the Supreme Court from relieving Foster from the task of proving actual malice. Nor does it prevent us from

8

relieving Abraham from doing so for the defamation was not restricted to his community and no evidence suggests that Abraham was known as a school board trustee worldwide. *See Guinn v. Texas Newspapers, Inc.*, 738 S.W.2d at 305 (stating that "[a]ppellees cite case law for the proposition that no charge is irrelevant to Guinn's official conduct, since there is always an implied relationship to his position . . . . [a]lthough the United States Supreme Court has interpreted the official conduct concept broadly, we hold its application does not include as a matter of law an individual who was proved only to be an elected justice of the peace in his own community. We find nothing in appellees' proof to indicate Guinn was known as a public official beyond the confines of his region").

So, we answer the question mentioned at the beginning of this opinion. A public official retains a private life. Abraham's first issue is sustained. The order of dismissal is reversed, and the cause is remanded.


Brian Quinn
Chief Justice