**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00163-CR**
_____

**BRUCE EDWARD LEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-03-03356-CR**

**MEMORANDUM OPINION**

A jury found Bruce Edward Lee ("Appellant" or "Defendant") guilty of the felony offense of driving while intoxicated and made an affirmative finding that he used his vehicle as a deadly weapon during the commission of the offense. Tex. Penal Code Ann. § 49.04. During the punishment phase of his trial, Lee pleaded "true" to two prior convictions, and the trial court assessed punishment at twenty-five years confinement in the Texas Department of Criminal Justice-Institutional Division. On appeal, Lee challenges the trial court's denial of his motion for mistrial,

1

arguing the State made an improper argument about the burden of proof during its closing argument. He also argues the evidence is insufficient to support the jury's findings that he was intoxicated and that his motor vehicle was exhibited or used as a deadly weapon. We affirm.

## BACKGROUND

**Eric Najera**

Eric Najera testified that he had been a trooper with the Texas Department of Public Safety for five years as of the time of trial. He described his professional and educational background and stated that he has conducted thirty to thirty-five DWI investigations in his career. Najera described a DWI as "basically just what it stands for, driving while intoxicated[,] [s]omebody drives…intoxicated…either…with alcohol or any other narcotic." He testified there are "three phases[]" to a DWI investigation, and he detailed each phase, including what goes into his initial decision to pull over a suspected DWI driver, what he is trained to observe in a suspect as possible clues of intoxication, and how to conduct standard field sobriety tests.

Najera recalled that on March 6, 2020, around one o'clock in the morning, he observed Lee driving his vehicle the wrong way on a one-way road. A video of Najera's dashcam was admitted and played at trial. The video showed that after Najera passed Lee's vehicle, Lee made a U-turn in the middle of the highway, in

2

front of another oncoming vehicle, before stopping in the roadway. Najera testified that driving the wrong way is something "[y]ou take into consideration[,]" when looking for clues of intoxication. According to Najera, he told Lee three times to pull over, once face to face, and two times over his car's PA system, and he explained that in his experience, the inability to follow simple instructions is also a possible clue of intoxication. Najera described Lee as "disoriented[,]" and testified that he "detected an odor of alcoholic beverage from [Lee's] breath when he spoke." Lee told Najara that he did not have a driver's license, only an identification card. Najera testified that when he searched Lee's person, he found a bottle cap in his pocket and questioned Lee if he had been drinking that night. Lee said he had consumed "three shots of Apple Amsterdam." When Najera asked Lee if he had smoked anything, Lee hesitated and said "[n]o at first[,]" but changed his answer to "yes[,]" admitting to smoking synthetic marijuana around midnight. Lee also provided inconsistent explanations about where he was going, initially telling Najera that he was leaving a store, and later saying he was driving to a store. Lee also believed it was five o'clock in the morning, but according to Najera, the stop occurred "a little bit after 1:00." Additionally, Lee provided inconsistent statements on his age, first stating he was thirty-five, and later telling Najera he was thirty-eight. Najera testified that Lee was "very confused[,]" and said that these discrepancies can be a sign of intoxication. Before conducting any field sobriety tests, Najera asked Lee if he had

3

a head injury or physical impairment. Lee denied having either. Najera then conducted what was described as "standardized field sobriety tests" on Lee.

First, Najera conducted a Horizontal Gaze Nystagmus (HGN) test on Lee. Najera explained that he observed four of the six possible clues for intoxication during the HGN test, which according to the NHTSA is an indication that a suspect's blood alcohol concentration level is usually at or above the limit, and supports a decision to arrest.[1] Next, Najera performed a "divided attention test" in which "you do different things at the same time." Najera asked Lee if he had any impairments before conducting this test and Lee told him he "had been shot in the leg" which was inconsistent with his prior statement denying any impairments, and Najera testified that he observed nothing in Lee's movement that would suggest he had an impairment in his knees or legs. Najera had Lee do a "walk and turn test[,]" during which Lee repeatedly used his arms for balance despite being told to keep his arms straight down by his side. He explained that he even allowed Lee to repeat the test "for the benefit of the doubt." Najera observed seven out of eight clues during this test and needed only two clues to make an arrest decision. Najera then had Lee perform a one leg stand test, noting that Lee almost fell over during the test. Najera

---

[1] The National Highway Traffic Safety Administration ("NHTSA") is an organization whose mission is to save lives, prevent injuries, and reduce economic costs due to road traffic crashes, through education, research, safety standards, and enforcement. NHTSA, https://www.nhtsa.gov (last visited Aug. 2, 2024).

observed two clues during this test, explaining an arrest decision can be based on two clues. Finally, Najera asked Lee a "0 to 10 scaled question[.]" "Basically, [I] asked him how he felt alcohol had affected his driving behavior[,] [z]ero being didn't have no effect[,]…10 highly affected." Lee told Najera that he rated a "four." Najera then made the decision to arrest Lee. At trial, he testified he is still confident in his decision to arrest Lee.

After arresting Lee, Najera read him his statutory warnings, including explaining to Lee he could either agree or refuse to give Najera a breath specimen or blood sample. Lee did not consent, and Najera procured a blood search warrant signed by a judge. Najera took Lee to a hospital, and he had his blood drawn pursuant to the search warrant. Najera explained that about two hours had passed since the initial stop and the arrival at the hospital. Lee's blood was collected and was stored in an evidence locker that was completely sealed until officers transported it to a crime lab. Najera identified the collected specimen in court and photos of the exhibit were admitted without objection.

Najera testified that troopers work "a lot of fatal crashes" and he "personally [has] worked a couple[]." According to Najera, Lee was driving on the wrong side of the road, and his vehicle was capable of causing serious bodily injury.

During cross-examination, Najera agreed that he had not met Lee before the stop in March 2020 and that he was not familiar with how Lee normally speaks or

5

walks, nor with his normal sense of direction. Although Najera told Lee at the scene, "[Y]ou almost hit me[,]" he agreed on cross-exam that he did not have to swerve to miss Lee, that he had ample time to get to the side of the road, and that Lee was driving with his lights on, albeit in the wrong direction. Najera stated that the place where he pulled Lee over and conducted the field sobriety tests was "[n]ot where I wanted him." He agreed that the area had "junk and rocks and things in front of the car[.]" Najera also agreed that he did not ask Lee any follow up questions after Lee told him he was shot in the leg. Najera testified that Lee did not have a limp, but was "slow in walking[.]"

**Randell Moore**

Randell Moore testified that she is an OR nurse at CHI St. Luke's Hospital in Lufkin. Prior to her current employment, she worked the night shift as a nurse in Conroe. She described her educational and professional background, stating that she has "years of experience" conducting blood draws, including those for law enforcement. Moore detailed the procedure to conduct a blood draw and confirmed that Lee's blood draw was conducted pursuant to her professional standards.

**Tifani Parker**

Tifani Parker testified she is a Toxicology Section Supervisor for the Texas Department of Public Safety Crime Lab in Houston. She stated before she was a supervisor, she was a forensic scientist with the crime lab and that her duties as a

6

forensic scientist included "working in the area of blood analysis[,]" including "generat[ing] reports based on my results, [and] testify[ing] to those results when necessary." Parker described her educational and professional background, including her duties as a supervisor at the crime lab, noting that she oversees quality control, "to show everything is working properly" at the lab. Parker described how the "blood kits" are stored at the crime lab, who has access to the vials, and how they are tracked and tested by the forensic scientists at the laboratory. She identified the kit collected from Lee and confirmed it was tested at her laboratory. Parker testified that she had reviewed the results of the tests and was confident in their results. A copy of the laboratory report was admitted into evidence without objection. She confirmed the report showed that Lee's blood sample had a blood alcohol concentration of "0.107 grams of alcohol per 100 milliliters of blood." Parker stated that the blood alcohol concentration was above the legal limit in the State of Texas. Parker described the effects of alcohol on the human body, describing a decrease in judgment and an increase in risk taking. "Alcohol is a central nervous system depressant[,] and [i]t's going to affect the brain when it enters your body[,] [including] blurry vision, slurred speech[,] sick[ness][,] [and] loss of balance." She noted that it could cause a loss in hand-eye coordination and inability to stay within the lines of the road.

During cross-examination, Parker agreed that after alcohol is consumed it does not have an immediate effect and that it takes time to absorb through the stomach and into the blood stream. Other factors include the person's sex and whether the person has food in their stomach. She noted it will take "some time to reach your peak absorption." She also agreed that the further removed a person is from when they are driving and when the sample is taken, the blood alcohol concentration will be further removed from what it was when they were driving.

Lee did not testify at trial and the defense did not call any witnesses. After closing arguments, the jury found Lee guilty of the felony offense of driving while intoxicated and made an affirmative finding as to a deadly weapon. After electing to have the court decide punishment, the trial court assessed punishment at twenty-five years incarceration in the Texas Department of Criminal Justice. Lee timely filed this appeal.

**Issue One: Improper Prosecutor Argument**

In his first issue, Lee argues that the trial court erred in denying his motion for mistrial after the State "shifted the burden of proof to the defense thus depriving [him] of his constitutional right to be presumed innocent until proven guilty." Lee contends that the trial court's instruction and the State's subsequent correction was not sufficient to overcome his presumption of innocence which "is enough alone to acquit[.]"

We review the trial court's denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the ruling if it was within the zone of reasonable disagreement. *Id*. A mistrial is the appropriate remedy only when the objected-to events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *See Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004) (citations omitted).

When evaluating whether a trial court abused its discretion by denying a defendant's request for a mistrial based on an improper jury argument, appellate courts balance several factors adopted in *Mosley v. State*, including (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)).[2]

---

[2]Appellant does not address the *Mosley* factors in his brief, whereas the State addresses the factors without calling them "*Mosley* factors," but does cite *Archie v. State*, which discusses the *Mosley* factors.

Because a mistrial is an extreme remedy, "a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). A mistrial is required only where the prejudice is incurable because it "is of such character as to suggest the impossibility of withdrawing the impression produced on the mind of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see also Ocon*, 284 S.W.3d at 884.

Lee complains on appeal of the following comment during the State's closing argument, after which the trial court denied his motion for mistrial:

> [THE STATE]: What I take the most issue with what the Defense had to say up here is that our case is built on assumptions. It's not. It's built on evidence. And as a general rule, what you can go back there with is the understanding that the State has brought you evidence in this case. The Defense hasn't brought you anything to back up what they're saying.
>
> [TRIAL DEFENSE ATTORNEY]: Your Honor, I'm going to object. Can we approach?
>
> THE COURT: Okay.
>
> (BENCH CONFERENCE OUTSIDE THE HEARING OF THE JURY)
>
> [TRIAL DEFENSE ATTORNEY]: Your Honor, I don't like to object during closing, but the Defense is not obligated to bring the evidence. It's a comment on the presumption of innocence.
>
> [THE STATE]: That's -- that is not burden-shifting to suggest that they have not brought evidence. The statement of the attorneys do not constitute evidence and we are free to point out –

THE COURT: No.

[THE STATE]: -- that they haven't brought evidence to support some of their evidence, Your Honor.

THE COURT: Well, I'm going to require that you tell these jurors that they're not required to bring evidence either.

[THE STATE]: That's good.

THE COURT: You'll say that?

[THE STATE]: Yes.

[TRIAL DEFENSE ATTORNEY]: And, Your Honor, I think for the record, I'm going to ask for a mistrial based off of that statement from [the State].

THE COURT: I think it can be corrected with something less drastic than a mistrial. So, that's denied.

[TRIAL DEFENSE ATTORNEY]: Yes, ma'am.

(BENCH CONFERENCE CONCLUDED)

[THE STATE]: Now, it is true that they're not required to bring evidence. Our Constitution doesn't require them to do that. But what your jury charge says is that statements from the attorneys are not evidence. We told you at the beginning of this trial that it was about the totality of the circumstances.

As explained below, considering the State's comments in light of the *Mosley* factors, we conclude the trial court did not abuse its discretion by denying Lee's motion for mistrial. *See Archie*, 340 S.W.3d at 739 (citing *Mosley*, 983 S.W.2d at 249).

11

"Our courts have consistently held that the State may argue in its closing argument that the defendant failed to present evidence in his favor." *Trevino v. State*, 474 S.W.3d 737, 749 (Tex. App.—Beaumont 2014, pet. ref'd).[3] Because the comment was not improper, the trial court would have been within its discretion to overrule the objection. *See id*. Instead, the court took steps to cure any alleged impropriety by instructing the State to tell the jury that the Defendant is not required to bring evidence, an instruction the State immediately followed. During voir dire, the trial court and both the State and the defense told the potential jurors that the State had the burden of proof. During opening arguments, the defense told the jury

---

[3]*See Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (the State may comment on defendant's failure to call certain witnesses and such a comment is not an impermissible attempt to shift burden of proof); *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (prosecutor's reference during closing argument to defendant's failure to produce expert testimony was not improper because the remark did not fault the defendant for exercising his right not to testify); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (holding that a prosecutor's comment is not improper if it "can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony"); *Rodgers v. State*, 486 S.W.2d 794, 797 (Tex. Crim. App. 1972) (explaining that a prosecutor may comment on the accused's failure to call a witness absent a showing that the witness was incompetent or that the accused could not, despite his exercise of due diligence, secure the witness's attendance at the trial); *Baines v. State*, 401 S.W.3d 104, 107-08 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that a prosecutor's comment on the defense's failure to subpoena two witnesses was not error); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting that "[d]uring jury argument, the State may comment on appellant's failure to present evidence in his favor"); *Lee v. State*, 21 S.W.3d 532, 544 (Tex. App.—Tyler 2000, pet. ref'd) (prosecutor's comment on the accused's failure to call the doctor that the accused told a witness he had taken the victim to see was not improper jury argument).

that the State had the burden of proof. The jury charge also included the following instructions:

> All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, indicted, or otherwise charged with an offense does not give rise to an inference of guilt at his trial. The law does not require a Defendant to prove his innocence. The presumption of innocence alone is sufficient to acquit the Defendant unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt, after careful and impartial consideration of all evidence in the case.
>
> The prosecution has the burden of proving the Defendant guilty by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the Defendant. It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof exclude all reasonable doubt concerning the Defendant's guilt. In the event you have a reasonable doubt as to the Defendant's guilt, after considering these instructions and all the evidence before you, you will acquit the Defendant and say by your verdict "Not Guilty."

On this record, we conclude that the prosecutor's complained-of remark had little, if any, prejudicial effect, and that the State's immediate clarification – in obedience to the trial court's instruction – was adequate to cure any harm. Therefore, we resolve the first and second *Mosley* factors against the Appellant. *See Archie*, 340 S.W.3d at 740-41.

Finally, we examine the record to determine the certainty of conviction absent the alleged misconduct. *See id.* at 739. The jury heard testimony that Lee was driving the wrong way down a one-way street. He admitted smoking synthetic marijuana

and drinking three alcoholic beverages at least an hour before he was pulled over. The jury also heard testimony that Lee had difficulty following instructions, smelled of alcohol, appeared disoriented, and gave conflicting answers to questions such as his age, why he was out driving, and the time of night. He also failed three field sobriety tests administered by Najera. Evidence was admitted that showed Lee's blood alcohol concentration was .107, over the legal limit in Texas. The jury is the sole judge of the credibility and weight of the witnesses' testimony, and the jury could have believed all, some, or none of the testimony of Najera and the other witnesses. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

On this record, we find the evidence to support the conviction to be strong, and we conclude that the jury likely would have convicted Appellant regardless of the prosecutor's allegedly improper argument. *See Archie*, 340 S.W.3d at 742; *Trevino*, 474 S.W.3d at 749. We conclude that the trial court did not abuse its discretion by denying the motion for mistrial, and we overrule Appellant's first issue. *See Archie*, 340 S.W.3d at 742; *Mosley*, 983 S.W.2d at 259-60.

### Issues Two and Three: Sufficiency of the Evidence

Because Lee presents two issues concerning the sufficiency of the evidence, we address those issues together. In his second and third issues, Lee challenges the sufficiency of the evidence to convict him of the offense of driving while intoxicated and to find that he exhibited or used a deadly weapon, his vehicle.

14

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the above evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We presume the jury resolved any conflicts in testimony in favor of the verdict. *See Brooks*, 323 S.W.3d at 899 n.13. We treat direct and circumstantial evidence equally and "'consider the combined and cumulative force of the evidence'" viewed in the light most favorable to the jury's verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We give deference to the jury's determinations, including determinations involving the credibility and demeanor of the witnesses; we may not substitute our judgment for that of the jury's. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Hardy v. State*, 246 S.W.3d 290, 295 (Tex. App.—Houston [14th Dist. 2008, no pet.).

A person commits the offense of driving while intoxicated when the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann.

15

§ 49.04(a). A person is intoxicated when he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into the body, or by having an alcohol concentration of 0.08 or more. *Id*. § 49.01(2)(A), (B).

Texas law allows juries to infer the defendant was intoxicated from circumstantial evidence showing "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking[.]" *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). For example, evidence showing "[a] lack of balance and slurred speech can prove intoxication." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Additionally, when based on the observations of an experienced police officer who has observed the defendant's behavior and then describes the behavior to the jury, the officer's opinion is evidence that is sufficient to support a jury's finding of intoxication. *See Annis v. State*, 578 S.W.2d 406, 408 (Tex. Crim. App. 1979); *Brister v. State*, 414 S.W.3d 336, 341 (Tex. App.—Beaumont 2013), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014).

Lee argues that the evidence is insufficient to demonstrate his intoxication at the time he was driving his vehicle. He complains that the field sobriety tests were performed in less-than-ideal conditions, he had impairments that the trooper did not

16

understand or take into consideration, and the blood sample was taken hours after he was pulled over. Viewing all the evidence in the light most favorable to the verdict, we hold there was sufficient evidence Lee was intoxicated. Najera testified Lee was driving the wrong way on a one-way road, had inconsistent answers to his questions such as his age and the time of day, appeared disoriented, was walking slowly, had breath that smelled of alcohol, demonstrated poor balance, had impaired coordination, had four clues of intoxication on the nystagmus gaze test, seven clues on the walk-and-turn test, and two clues on the one-leg stand. Additionally, Lee admitted to Najera that he smoked synthetic marijuana an hour before the arrest and drank at least three alcoholic beverages that night.

Further, the jury could draw its own conclusions from observing Lee's behavior in the videotape in deciding whether he appeared intoxicated. *See generally Vaughn v. State*, 493 S.W.2d 524, 525 (Tex. Crim. App. 1972) ("It is elementary in Texas that one need not be an expert in order to express an opinion upon whether a person he observes is intoxicated."). Finally, the copy of Lee's laboratory report showed Lee had a blood alcohol concentration over the allowable limit. A blood alcohol test result showing that the defendant exceeded the legal limits at the time of the blood draw, considered with other indicia of intoxication at the time of the traffic stop, may logically support an inference that the defendant was driving while intoxicated. *See Kirsch*, 306 S.W.3d at 745.

The evidence of intoxication was neither so obviously weak that the verdict is clearly wrong and manifestly unjust, nor was the jury's verdict so contrary to the evidence that the beyond-a-reasonable-doubt burden of proof could not have been met. As the sole judge of the weight and credibility of the evidence, the jury bore the burden of determining what to believe. *See Hooper*, 214 S.W.3d at 13. In doing so, the jury could reasonably conclude, based on Najera's testimony about Lee's driving the wrong way, his appearance, his answers to Najera's questions, and his conduct during the field sobriety tests, that Lee had actually been driving while intoxicated. *See Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015). The jury could also reasonably conclude that Lee did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body and that he had an alcohol concentration of 0.08 or more. *See* Tex. Penal Code Ann. § 49.01(2)(A), (B). Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could find, beyond a reasonable doubt, that Lee committed the offense of driving while intoxicated. *See id*. § 49.04(a); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule Lee's second issue.

Lee also challenges the sufficiency of the evidence to support the jury's finding that Lee used or exhibited a deadly weapon because although he was on the wrong side of the road, traffic was light, he was not engaging in "reckless driving,"

and there was "plenty of time" for Najera to change lanes and pass by without incident.

A deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B). "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). When evaluating the deadly weapon issue in a driving while intoxicated case, we consider (1) the manner in which the defendant used the motor vehicle during the felony; and (2) whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). As to the manner in which Lee used his vehicle during the commission of the offense, we consider factors such as (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *See Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Sierra*, 280 S.W.3d at 255-56. The State is not required to show the actor actually intended death or serious bodily injury, nor that any such harm actually occurred. *Moore v. State,* 520 S.W.3d 906, 908 (Tex. Crim. App. 2017). Rather, the State can satisfy its burden by proving the defendant used the vehicle in such a way that the vehicle was capable of causing a serious bodily injury or death to others. *Id*.; *see also Drichas*,

19

175 S.W.3d at 799 ("[A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner."). However, the danger must be actual, not merely hypothetical. *Drichas,* 175 S.W.3d at 799.

Citing our opinion in *Brister v. State*, Lee argues the State failed to prove that he placed others in actual danger. 414 S.W.3d at 342. In *Brister*, we reversed the trial court's affirmative deadly weapon finding, holding that although Brister's vehicle crossed into the opposite lane, the evidence showed there were few or no cars on the road, and "the State failed to show that Brister's use of his motor vehicle placed others in actual danger of death or serious bodily injury." *Id*. at 344. Lee argues that his case is similar to *Brister* because there were no other cars on the road. We disagree.

In *Brister* we reasoned, "Here, we have testimony that Brister's car crossed the center line one time and nothing further… In light of Officer Warner's further testimony that there were '[v]ery few, if any, cars on the roadway[,]' the only reasonable inference that can be drawn is that Brister crossed the center line into the lane of 'oncoming traffic' and *not into the path of an oncoming car*." *Id*. (emphasis added). Unlike the defendant in *Brister*, Lee was not only driving the wrong way on a one-way highway, he was also driving into the path of an oncoming car – Najera's

20

-- and Najera testified that Lee's driving could have caused a fatal crash or serious bodily injury.

Additionally, dashcam footage admitted at trial shows that after Najera changed lanes and passed Lee's oncoming vehicle, another car's approaching headlights can be seen while Lee makes a U-turn and stops his vehicle on the dark highway. In *Brister*, the possibility of an injury-causing collision was only hypothetical because there were no other vehicles with which to collide when Brister briefly crossed the center line. Here, the evidence allowed a reasonable factfinder to conclude that the manner in which Lee used his vehicle made it capable of causing a head-on collision with Najera's patrol car or a potentially injurious collision with the unidentified vehicle. Although the other drivers' alertness and evasive action prevented injuries or death from actually occurring, the danger created by Lee's use of his vehicle was real, not hypothetical. *See Drichas*, 175 S.W.3d at 799 ("While the court of appeals is correct in noting that the danger posed to motorists must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding."); *see also Moore,* 520 S.W.3d at 908; *Ybarra v. State*, No. 11-16-00219-CR, 2018 Tex. App. LEXIS 6734, at *7-8 (Tex. App.—Eastland Aug. 23, 2018, no pet.) (mem. op.) (citing to *Drichas* and *Moore* and holding that a driver "driving on the wrong

21

side of the road evidences actual endangerment in the manner in which the operator drives an automobile").

Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could find, beyond a reasonable doubt, that the manner in which Lee used his vehicle when driving while intoxicated was capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *see also Sierra*, 280 S.W.3d at 255; *Hooper,* 214 S.W.3d at 13. We overrule Lee's third issue.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on February 21, 2024
Opinion Delivered August 28, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.